# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# NO. 1:18CV206-GCM

| | | |
|---|---|---|
| **EDWARD L. BENFIELD** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner** | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 11) and the Commissioner's Motion for Summary Judgment (Doc. No. 14) and Memorandum of Law in Support (Doc. No. 15). Having carefully considered such motions and memorandum and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**I.  Background**

On March 4, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (Tr. 16). In both applications, the Plaintiff alleged a disability onset date of October 15, 2012. (Tr. 16). Both applications were denied, first on January 12, 2015 and then upon reconsideration on March 20, 2015. (Tr. 16). Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 16). That request was granted. (Tr. 16).

In evaluating Plaintiff's alleged disability, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. (Tr. 20). The ALJ also engaged in a five-step sequential review pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). As a part of that review, the ALJ determined that: (1) the Plaintiff had not

engaged in substantial gainful activity since the alleged onset of disability; (2) the Plaintiff had severe impairments (herniated lumbosacral disc, degenerative disc disease of the thoracic spine, osteoarthritis of the knees, degenerative changes in the neck, osteoarthritis in the shoulders, obesity, obstructive sleep apnea, hypertension, and organic mental disorder); (3) none of the Plaintiffs impairments or combination of impairments meet the severity of those listed in 20 CFR 404, Subpart P, Appendix 1; (4) given the Plaintiff's residual functional capacity, he cannot perform any past relevant work; (5) and, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act, denying both the Plaintiff's application for a period of disability and disability insurance benefits and his application for supplemental security income. (Tr. 33, 34).

The Plaintiff requested review of that decision by the Appeals Council on August 29, 2017. (Tr. 5). The Appeals Council denied that request on May 22, 2018, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action, seeking judicial review of the Commissioner's final decision. (Doc. No. 1).

## II.     Standard of Review

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g), but review is limited to consideration of (1) whether the Commissioner applied the correct legal standards and (2) whether *substantial evidence* supports the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review of the evidence is not performed *de novo*.

*Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986). Instead, review is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 400. Put another way, substantial evidence must be "more than a mere scintilla . . . but may be less than a preponderance." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations and internal quotations omitted). When reviewing for substantial evidence, courts should not "reweigh conflicting evidence, make credibility determinations, or substitute [a court's] judgment for that of the ALJ." *Id.* (citation and internal quotations omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ," not the court. *Id.* (citations and internal quotations omitted).

### III. Discussion

The Plaintiff made the following assignments of error: (1) the ALJ's reliance on the vocational expert's ("VE") testimony was improper and his testimony did not constitute substantial evidence on which the ALJ could properly rely, (2) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence, and (3) the ALJ failed to properly weigh certain medical opinions. The undersigned's review of the record makes clear that the ALJ either did not err, or, where he did, that error was harmless.

#### A. Reliance on the VE's Testimony

Plaintiff argues that the ALJ did not apply the correct legal standard when she failed to properly question the VE regarding the consistency of the VE's testimony with the Dictionary of Occupational Titles ("DOT"). Plaintiff also argues that the VE's testimony did not provide substantial evidence for the ALJ's decision. Both challenges may be reviewed pursuant to 42 U.S.C. § 405(g).

### 1. The ALJ's Questioning of the Vocational Expert

According to Plaintiff, the ALJ erred because she did not ask the VE whether his testimony was consistent with the DOT *after* his testimony was complete, even though—Plaintiff concedes—the ALJ did ask the VE whether his testimony would be consistent with the DOT *before* his testimony was complete. Plaintiff's challenge is primarily rooted in the wording of Social Security Ruling ("SSR") 00-4p, which provides that ALJs must ask if the testimony a VE "*has provided* conflicts with information provided in the DOT." 2000 WL 1898704, at *4 (emphasis added). According to Plaintiff, because that sentence uses the past tense when describing the VE's testimony, the ALJ must inquire into conflicts after, not before, that testimony is complete.

The Plaintiff overstates the SSR's requirement. SSR 00-4p creates an "affirmative responsibility [for ALJs] to ask about any possible conflict between [evidence provided by the] VE . . . and [the] information provided in the DOT" when a VE "provides evidence about the requirements of a job." 2000 WL 1898704, at *4. The SSR goes on to explain (somewhat redundantly) that, in those circumstances, the ALJ will ask whether the evidence the VE "has provided conflicts with information provided in the DOT" and also that the ALJ will "obtain a reasonable explanation for the apparent conflict." *Id.* The purpose of that requirement is to identify and resolve conflicts—it is not a mandate that ALJs adopt a specific order of questioning.

The ALJ satisfied that requirement, asking the VE whether his testimony would "be consistent with the Dictionary of Occupational Titles unless [he] so state[d]," and the VE responded in the affirmative. (Doc. No. 11-1, at 4). Even if an ALJ must inquire as to consistency only after a VE's testimony is complete, the ALJ did so here on multiple occasions. For example,

the ALJ inquired both whether General Educational Development ("GED") levels[1] and overhead reaching and sit-stand options were "covered by" the DOT. (Tr. 94). Thus, the ALJ properly inquired as to conflicts between the VE's testimony and the DOT.

### 2. The ALJ's Hypothetical

Plaintiff argues that the VE's testimony did not provide substantial evidence for the ALJ's decision. Plaintiff also argues, implicitly, that several of the ALJ's factual findings are not binding because they were reached by misapplication of the law. According to Plaintiff, (1) the ALJ incorrectly included past work in the hypothetical to the VE, (2) the ALJ incorrectly concluded that Plaintiff was capable of "level 1" language even though that was not supported by substantial evidence, and (3) the VE's testimony regarding available jobs, on which the ALJ relied, was not responsive to the ALJ's specifications.

First, the undersigned addresses Plaintiff's contention that the ALJ improperly included irrelevant past work experience in the hypothetical to the VE. According to 20 C.F.R. § 404.1565, the Commissioner does "not usually consider [the] work [that a claimant] did 15 years or more before the time [the ALJ is] deciding whether [the claimant is] disabled" relevant to the disability question being addressed. Plaintiff asserts that, contrary to that restriction, the ALJ included in her hypothetical Plaintiff's former work as a "lead boiler person," a job he asserts ended fifteen years and one day before the ALJ's decision. (Doc. No. 11-1, at 7). Plaintiff reaches that conclusion by

---

[1] The ALJ asked the VE: "your testimony about absences, off-task, the reading, written instructions and preparing reports – is the GED – is that covered by the –." (Tr. at 94). The VE responded: "It is in the DOT." *Id.* Plaintiff takes that exchange to mean that the VE testified that absences and off-task requirements were in the DOT—they are not—and identifies that as an apparent conflict between the DOT and the VE's testimony. (Doc. No. 11, at 4-5). In contrast, Defendant contends the VE's answer refers only to the GED, since the ALJ used the singular "that," and the VE also used the singular "it" in response. The undersigned agrees with Defendant that the terms "that" and "it" refer to the GED, the latest task or requirement mentioned by the ALJ.

5

extrapolating from the previous year's tax record. However, Plaintiff's estimate is speculative—Plaintiff does not point to anything concrete in the record indicating that he stopped working as a lead boiler person on or before August 28, 2002, which would have been fifteen years and one day prior to the ALJ's August 29, 2017 decision. (Tr. 5). While Plaintiff provides one possible interpretation of a work history report stating that he was employed in that position in 2002, it was reasonable for the ALJ to adopt a different conclusion.

Second, the undersigned addresses Plaintiff's argument that the ALJ's conclusion that Plaintiff was capable of "level 1 language"—incorporated into the VE's hypothetical—was not supported by substantial evidence. Plaintiff relies, in part, on his testimony in the record indicating that he was nearly, if not completely, illiterate to argue that he is not capable of level 1 language. However, the ALJ is not required to accept that testimony wholesale. Instead, Plaintiff's subjective description of his impairments must be viewed in light of "objective medical evidence from . . . acceptable medical source[s] . . . show[ing that he has] a medical impairment(s) which could reasonably be expected to produce the . . . symptoms alleged." 20 C.F.R. § 404.1529(a).

As the ALJ noted, the sole indication of illiteracy in the medical record was from an internal medicine examiner who did not perform a literacy test. (Tr. 23). Consequently, the ALJ accorded that determination less weight. (Tr. 23). In addition, the ALJ relied on Plaintiff's testimony at the hearing that he could read short words. (Tr. 29). While Plaintiff points to contrary evidence, the undersigned declines to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgement for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). It was reasonable for the ALJ to determine that Plaintiff was capable of level 1 language.

Third, the undersigned addresses Plaintiff's argument that the VE's testimony regarding available jobs was not responsive to the ALJ's job specifications. (Doc. No. 11-1, at 11). The VE

testified that Plaintiff could perform the jobs of small parts assembler, plastic hospital products assembler, and laundry folder. (Tr. 95-96). According to Plaintiff, a hospital products assembler "reviews work orders" and "labels cartons with identifying information." (Doc. No. 11-1, at 12). Plaintiff argues that job exceeds the Plaintiff's RFC limitations because it involves written instructions. (Doc. No. 11-1, at 12). However, even if the Plaintiff is correct, 123,000 jobs which the Plaintiff can perform remain after excluding hospital products assembler jobs. (Tr. 29, 95-96). That number far exceeds the 110 jobs the Fourth Circuit has deemed sufficient to substantiate a nondisability finding. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Because remand would not lead to a different result, any error was harmless. *See Dover v. Astrue*, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012).

### B. RFC Determination by the ALJ

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence and, implicitly, that the ALJ used an improper standard when reaching that determination—challenges that may be reviewed pursuant to 42 U.S.C. § 405(g). An RFC assessment must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence *(e.g.*, daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *4 (S.S.A.). In addition, an RFC assessment must identify "the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." *Id.* The Fourth Circuit explained that requirement as building "an accurate and logical bridge" from the evidence to the conclusion. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citations and internal quotations omitted). Plaintiff offers four challenges to the ALJ's RFC determination: (1) the RFC does not account for Plaintiff's obesity, shortness of breath, and fatigue, (2) there is no logical bridge between the

evidence and the ALJ's conclusion with regard to Plaintiff's oxycodone-induced drowsiness, (3) the RFC does not account for Plaintiff's frequent urination, and (4) the RFC does not account for Plaintiff's issues with twisting and bending.

### 1. Obesity, Shortness of Breath, and Level of Fatigue

Plaintiff argues that the RFC does not properly account for Plaintiff's obesity, shortness of breath, and level of fatigue. While Plaintiff concedes that the ALJ provided evidence in support of its conclusion that Plaintiff can sustain work on a regular, reliable, sustained basis, Plaintiff suggests that evidence is "cherry-pick[ed]" and that there is no logical bridge between that evidence and the ALJ's conclusions. (Doc. No. 11-1, at 16). In support of those challenges, Plaintiff cites to various portions of the record to show that he cannot sustain work on a regular basis and attacks the evidence relied on by the ALJ.

The ALJ, however, provided a function-by-function discussion of Plaintiff's alleged shortness of breath, fatigue, and obesity. Regarding Plaintiff's shortness of breath, the ALJ noted Plaintiff's complaints but found that there were records of normal breathing and clear lungs in 2014 and 2016. (Tr. 28). Regarding Plaintiff's alleged fatigue, the ALJ specified that Plaintiff's problems with "stamina [were] adequately addressed in the [RFC]," which permits Plaintiff to alternate between sitting and standing every 30 minutes. (Tr. 28). Regarding Plaintiff's obesity, the ALJ found that the Plaintiff was obese and applied the relevant policy, Social Security Ruling 02-01p, Evaluation of Obesity, 2002 WL 34686281 (S.S.A.). (Tr. 25-26). The ALJ properly considered obesity in combination with Plaintiff's other impairments and found that the "light work" and sit/stand option in the RFC "adequately account[ed] for the limiting effects of [Plaintiff's] obesity." (Tr. 25).

Thus, it is not true that the Plaintiff's claims were not accounted for—they were systematically reviewed and, if reliable, incorporated into the RFC. To the extent Plaintiff argues the ALJ did not list all the evidence in the record pertaining to drowsiness, shortness of breath, or obesity, it is clear from the written discussion that the ALJ considered the entire record, and there is no rigid requirement that an ALJ specifically refer to every piece of evidence. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Nor did the ALJ "cherry-pick" facts as Plaintiff alleges—the ALJ merely reached, from Plaintiff's perspective, an undesirable conclusion when presented with conflicting evidence, which is not the same as selectively choosing which evidence to consider. *See Denton v. Astrue*, 596 F.3d 419, 425, 2010 U.S. App. LEXIS 3909, *15, 151 Soc. Sec. Rep. Service 12, Unemployment Ins. Rep. (CCH) P14,590 (2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

### 2. Drowsiness as an Effect of Oxycodone

Plaintiff also suggests that "[t]he ALJ cited [the Plaintiff's] contention that oxycodone made him drowsy and rejected that out of hand as 'inconsistent with the record,' citing no inconsistency." (Doc. No. 11-1, at 21). However, the ALJ also explained that even if it were not inconsistent, "the [RFC] provides for avoiding unprotected heights." Further, the RFC provides for Plaintiff to "change position every 30 minutes," a limitation provided as a result of Plaintiff's knee, back, and shoulder pain as well as his *drowsiness*. (Tr. 28). Thus, even to the extent that the ALJ was wrong to dismiss Plaintiff's contention of drowsiness, the RFC incorporated corresponding limitations. Thus, remand would not lead to a different result and any error was harmless. *See Dover v. Astrue*, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012).

9

### 3. Frequent Urination

Plaintiff asserts that the ALJ erred by ignoring Plaintiff's alleged frequent urination when determining his RFC. (Doc. No. 11-1, at 21). According to the Plaintiff, he testified that he had to go to the bathroom 20 to 30 times a day and the VE acknowledged "that if a hypothetical person had to leave his work area even ten times during the day to go to the bathroom, there would be no work which he could perform." (Doc. No. 11-1, at 21). As an initial matter, needing to go to the bathroom 20 to 30 times per *day* is not the same as needing to go to the bathroom 20 to 30 times per "*workday*"—the language used by the ALJ when crafting the hypothetical for the VE. (Tr. 99). Further, the ALJ stipulated in her hypothetical that that the person had to use the bathroom on average ten times per workday "*other than scheduled breaks*." (Tr. 99). The ALJ could have reasonably found that after considering non-work hours and scheduled breaks, the Plaintiff needed fewer than 10 unscheduled bathroom breaks per work day. Regardless, absent any other objective evidence or support from the medical record, it was reasonable for the ALJ to reject Plaintiff's allegation of frequent urination. *See Craig v. Chater,* 76 F.3d 585, 595 (4th Cir. 1996) (A claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence").

### 4. Twisting and Bending

Plaintiff argues that he has difficulty with twisting and bending because it aggravates his back pain and that nothing in the RFC addresses twisting and bending. (Doc. No. 11-1, at 22). Plaintiff also argues that the "ALJ simply discounted [Plaintiff's] contentions regarding his back problems." However, the ALJ specifically addressed both Plaintiff's back pain that worsened with "bending and twisting," and he supported his conclusion regarding Plaintiff's back pain with evidence. (Tr. 25). For example, the ALJ concluded that Plaintiff's "most recent medical records

do not reflect reports of such symptoms," and Plaintiff's "symptoms have responded to conservative treatment with medication." (Tr. 25). The ALJ also relied on reports from Plaintiff that his pain had improved and stabilized. (Tr. 25). Further, the ALJ cited an August 2015 examination where Plaintiff exhibited "normal gait and station, and [his] motor strength was . . . normal in his extremities." (Tr. 25). Ultimately, the ALJ supported his analysis and conclusions with 11 citations to the record, building a logical bridge between his evidence and his conclusions (and providing substantial evidence in support of them).

### C. ALJ's Reliance on Medical Opinions

The Plaintiff also argues that "[t]he ALJ did not properly evaluate the medical opinions as required by 20 C.F R.§404.1527 for claims filed before March 27, 2017, in particular rejecting the opinion of consulting physician Stephen Burgess, M.D., Ph.D., who opined that his examination was consistent with Mr. Benfield's description of his limitations and rejecting most of the limitations of his treating physician, Amy Chidester, M.D." (Doc. No. 11-1, at 24). Plaintiff's challenge that the ALJ used the wrong standard when evaluating medical opinions may be reviewed pursuant to 42 U.S.C. § 405(g).

To determine whether a claimant is disabled, an ALJ "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b) and 416.927(b). A medical opinion from a treating source will be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). For all opinions that are not afforded controlling weight, an ALJ must determine how much weight to give to that opinion using the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). For example, the length of the treatment relationship,

the frequency of examination, the nature and extent of the treatment relationship, the degree to which a medical source provides evidence and explanations for their opinions, the consistency of the medical opinion with the record, the medical source's specialization, and other relevant factors. *Id.* An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

The ALJ's evaluation of the medical opinions cited by Plaintiff were proper. Plaintiff did not provide a single instance where the ALJ failed to consider a medical opinion or failed to give controlling weight to an opinion well-supported by medially acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. Further, the ALJ properly determined how much weight to give the medical opinions, citing factors such as the Plaintiff's treatment relationship with the medical sources, conflicting evidence in the record (including from subsequent medical examinations), conflicting statements made by the Plaintiff (and the Plaintiff's presentation at the hearing), and the supporting evidence and explanations (or lack thereof) provided by the medical sources. (Tr. 29-30). Because the ALJ provided sufficient reasons for the weight afforded the medical opinions and the ALJ relied on no specious inconsistencies, the undersigned declines to disturb the weight the ALJ assigned to the medical opinions. *See Dunn*, 607 Fed. App'x at 267.

## IV. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported

by substantial evidence and contains no legal errors or that any error is harmless. Thus, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **denied**, the Commissioner's Motion for Summary Judgment (Doc. No. 14) is **granted**, and the decision of the Commissioner **affirmed**. Accordingly, this action is **dismissed**.

Signed: September 6, 2019

Graham C. Mullen
United States District Judge